JUAN BOYLE *vs.* THE PEABODY HEIGHTS COMPANY OF
BALTIMORE CITY.

*Construction of a Covenant to renew a lease, in which it was
not expressed in terms when the renewed lease should com-
mence.*

The Peabody Heights Company of Baltimore City, sub-leased certain parcels
of ground to A. J. G., who afterwards assigned his interest to J. B.   The
deeds of sub-lease contained a covenant for renewal in these terms: "and
also, that at any time during the continuance of this demise, the Peabody
Heights Company of Baltimore City aforesaid, or its assigns, shall, and will,
on payment to it or them of ten dollars as a fine therefor, execute and
deliver, or cause and procure to be executed and delivered to the said A.
J. G., his executors, administrators *or assigns*, at his or their request and
cost, a new sub-lease of the above described parcels of ground and premises,
or either of them, reserving to the said lessor a reversion of one day therein,
which new sub-lease shall be subject to the same rents and contain the like
covenants as are herein contained ; and in particular a covenant [for per-
petual renewments, *so that this lease*, and the estates created thereby, and
each and every of them shall be renewable, and renewed from time to time
forever." HELD :

1st.  That like all other contracts the real intention of the parties to this cove-
nant must control its interpretation.

2nd.  That the purpose of the covenant was to preserve the lease for its original
term, and the estates which it created, and to continue them forever.

3rd.  That to accomplish this and carry out the intention of the parties, a new
lease if required under this covenant, should be made to commence and
take effect from the expiration of the original term.

4th.  That the insertion of words in the covenant stating expressly when the
new term should commence, was not necessary, if by other terms and pro-
visions, and the character of the whole instrument the same intention was
made to appear.

5th.  That such intention was manifest upon the face of the said conveyance.

On a bill filed by J. B. against the sub-lessor, claiming a renewal of said sub-leases to take effect at once, it was alleged that there were certain inaccuracies in the description of two of the lots, which the complainant was entitled to have corrected, it was HELD :

That J. B. was not entitled to relief upon this ground without making the sub-lessee a party to the bill, and requiring him to be united in the new lease.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER and ALVEY, J.

*Frank Gosnell* and *T. M. Lanahan,* for the appellant.

Covenants are frequently inserted in leases where the landlord agrees to execute a new lease at some designated period.

" Under this covenant (to renew) the lessor is bound to make another lease, either to the lessee *or his assignee;* and if the terms of such covenant are express and unequivocal, the performance of it will be duly enforced by a Court of equity." *Taylor on Landlord and Tenant,* (3rd Ed.,) 224 ; *section* 332 *of section* V, *and authorities there cited.*

The contract in this case contains all the essential elements requisite to entitle the complainant to ask the assistance of a Court of equity to enforce it. " It is fair, just, reasonable, *bona fide,* mutual and certain in all its parts." *Stoddert vs. Bowie,* 5 *Md.,* 35 ; *Gelston & Meyenberg vs. Sigmund,* 27 *Md.,* 343.

" When a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for Courts of equity to decree specific performance of it, as it is for a Court of law to give damages for a breach of it; and Courts of equity will decree a spe-

cific performance when the contract is in writing and is certain, and is fair in all parts, and is for an adequate consideration and capable of being performed." *Smoot vs. Rea & Andrews*, 19 *Md.*, 398, 405 ; *Moncrieff vs. Goldsborough*, 4 *H. & McH.*, 281; *Brewer vs. Herbert*, 30 *Md.*, 312.

It will be seen that the usual form of covenant for renewal in Maryland was not resorted to in this case, but a decided departure was taken therefrom by the original parties, and they adopted one of their own, not stating when the new sub-lease should begin.

" When no time is limited for the doing of the thing, it shall be done in a reasonable time." *Platt on Covenants,* (*3rd Law Library,*) *top p.* 65, *marg.* 145.

*E. Calvin Williams* and *John H. Thomas,* for the appellee.

The appellee's covenants only required it to execute such new sub-leases as were necessary and proper for the renewal of the terms created by its sub-leases to Gosman. This it offered to do. The new sub-leases demanded of it were not intended to be and would not have been a renewal, but a destruction of these which had been executed to Gosman. 1 *Platt on Leases*, 464 ; 2 *Platt on Leases,* 505-6-7 ; *Taylor on Landlord and Tenant,* sec. 340 ; *Thomasvs. Cook,* 2 *Barn. & Ald.*, 119 ; *Walker vs. Richardson*, 2 *Mees. & Wels.*, 882 ; *Collett vs. Hooper*, 13 *Vesey,* 260 ; *Lyon vs. Reed*, 13 *Mees. & Wels.*, 304-5-6; *Dodd vs. Acklen,* 6 *Mann. & G.*, 679. Gosman remained liable under his covenants, notwithstanding his assignments. The new sub-leases demanded of the appellant were intended to release him from that liability. *Taylor on Landlord and Tenant, sec.* 680 ; *Moale vs. Tyson*, 2 *H. & McH.*, 387.

If this be not, as is contended, the literal construction of the appellee's covenants, it is the spirit of them.

" Courts of equity determine the rights of persons according to the broad principles of justice and fair dealing, and

40                              v. 46.

not by technical and refined rules. They will carry out and perfect their contracts according to the real. intention of the parties, under any given state of circumstances, independent of any narrow and technical rules of construction." *Maughlin vs. Perry*, 35 *Md.*, 352-57-8-9 ; *Banks vs. Haskie*, 45 *Md.*, 207.

Even Courts of law will, if necessary, reject words used in the most solemn instruments, if obviously inconsistent with the meaning of the parties. *Cooke vs. Graham's Adm'r*, 3 *Cranch*, 235 ; *Yeaton vs. Fry*, 5 *Cranch*, 335-42.

Specific performance is not a right to which one is entitled *ex debito justitiæ*. Courts of equity grant or refuse it as justice may require. *Maughlin vs. Perry*, 35 *Md.*, 352-57 ; *Semmes vs. Worthington*, 38 *Md.*, 299, 325 ; *Waters vs. Howard*, 8 *Gill*, 262-270 ; *Manning vs. Wadsworth*, 4 *Md.*, 60-70 ; *Geiger vs. Green*, 4 *Gill*, 472-75-76 ; *Smoot vs. Rea*, 19 *Md.*, 398-405 ; *Hamilton vs. Jones*, 3 *G. & J.*, 127-131 ; *Taylor on Landlord and Tenant*, sec. 337 ; *Gelston vs. Sigmund*, 27 *Md.*, 343.

Even if, therefore, the appellee's covenant, literally construed, was, as its counsel contend it was not, to execute such sub-leases as were demanded by the appellant, it relied on and contracted for the responsibility of Gosman for the rent, made no contract in reference thereto with the appellant, and justice would not be promoted by requiring it to forego the real consideration of its contract to give up a valuable responsibility for which it stipulated, and accept in lieu of it, a worthless one, not within its contemplation.

MILLER, J., delivered the opinion of the Court.

The appellee a corporation duly incorporated under the laws of this State, being the lessee for a term of ninety-nine years renewable forever, of certain real estate situated in Baltimore County, on the 5th of June, 1872, sub-leased several parcels of the same to Adam J. Gosman.

Afterwards on the 29th of June, 1876, Gosman assigned and conveyed these premises to Juan Boyle, the appellant. and he, on the 6th of September, 1876, filed a bill against the appellee, praying that the latter may be decreed to executed a new sub-lease to him of these premises. The main ground upon which this relief is asked, is that a covenant contained in the original sub-lease to Gosman, stipulates and provides for the execution of such new lease to his assignee. The covenant relied on is in these terms : '' and also that at any time during the continuance of this demise the Peabody Heights Company of Baltimore City aforesaid, or its assigns, shall and will, on payment to it or them of ten dollars as a fine therefor, execute and deliver, or cause and procure to be executed and delivered to the said Adam J. Gosman, his executors, administrators or *assigns,* at his or their request and cost, a new sub-lease of the above demised parcel of ground and premises or either of them, reserving to the said lessor a reversion of one day therein : which new sub-lease shall be subject to the same rents, and containing the like covenants as are herein contained, and in particular a covenant for perpetual renewments, *so that this lease* and the estates created thereby, and each and every of them may be renewable and renewed from time to time forever.''

The appellee admits its obligation under this covenant to execute a new lease, to take effect after the expiration of the term originally created, but denies that it is bound to execute a new lease such as the appellant demands, to take effect immediately and covering the same period of time as that covered by the original term. It contends, and there can be no question of the soundness of the position, that if the new lease demanded should be executed without making Gosman a party thereto, the original lease would be destroyed, and he would be absolved from his covenant to pay the rent, as well as from the other covenants on his part which that lease contains, whereas, if no such

new lease be executed, he will remain liable on these cove-
nants notwithstanding his assignment to the appellant.
It is by reason of this effect of the new lease demanded the
appellee resists its execution, and contends that by the
true construction of the covenant relied on, no such obli-
gation is imposed on the lessor. This requires us to ascer-
tain the true meaning in this respect of the covenant in
question. Like all other contracts the real intention of
the parties to it must control its interpretation. The lease
in which this covenant is contained conveys the property
for all the rest and residue, save one year, of the term of
years yet to come and unexpired of the lessor therein, and
reserves a yearly rent of $159.37$\frac{1}{2}$, on each of the parcels
of ground thereby demised, and this rent, Gosman, the
lessee covenants to pay, as well as all taxes or other assess-
ments levied or to be levied or charged on the premises,
or on the rents above reserved. It also contains a cove-
nant, "that whenever either of the lots hereby demised
are improved by the erection of such building or build-
ings as may be approved of by said company, and required
by the conditions of this lease the company will execute to
the said Adam J. Gosman, his executors, administrators
or assigns, a good and sufficient original lease of said lot
or lots of ground so improved, subject to the rent hereby
reserved, with a covenant of renewal forever in the usual
way such leases are prepared in the City of Baltimore,
with a covenant also in said lease for the redemption of
each of said rents at any time within eight years from the
first day of January, 1872, on the payment of" a specified
sum. Then follow provisions as to what character of build-
ings shall be erected, of what size, and how located. From
these terms and conditions it appears the property was
unimproved at the time this sub-lease was executed, and
that the parties contemplated it should be improved, and
that when the improvements were made by which pay-
ment of the rent would be more effectually secured, it

should be superseded by an original lease placing the sub-tenant on the footing of an original lessee for ninety-nine years, renewable forever, with the privilege to redeem the ground rent, and make himself owner in fee within a specified time   In that state of case and until the improvements were made, it was important as well as natural and reasonable for the lessor to lease to a responsible tenant upon whose ability to pay the rent he could depend, and not to bind himself in this temporary arrangement by any covenant, by which the lessee, if dissatisfied with his bargain could escape from that responsibility ; and it is also fair to presume, that when the lessee took this lease he contemplated making the improvements, and was unwilling when he made them to be held to the position of a mere sub-lessee, but desired and stipulated for the better status of an original lessee, with the privilege of becoming the fee-simple owner of the improved property.   That, we think, was the intention of both parties to this instrument when it was executed.   In our opinion it was its chief design to subserve the temporary purpose we have indicated, viz., to secure to the lessor the payment of the rent until the improvements were made, through the personal liability of a responsible tenant, and then to give to the latter the rights and privileges of an original lessee with a redeemable ground rent.   Now is there any thing in the terms of this covenant which forbids a Court to place this construction upon it, and compels the opposite construction under which it would be quite competent for Gosman to escape all liability by assigning to an irresponsible party, and then inducing the party to demand and enforce the execution of a new lease to himself as assignee?   We think not. On the contrary, by a fair reading of this covenant it seems to intend that the new leases for which it provides shall have the effect to *preserve* and not to *destroy* the original lease, and that is manifested by the terms, " so that *this lease* and the *estates created thereby,* and each and every of

them may be *renewable* and *renewed from time to time forever.*" This is the governing and controlling clause of the whole covenant, and expresses the purpose for which it was entered, viz., to preserve the lease for its original term, and the estates which it creates, and to continue them forever. To accomplish this and carry out what seems to us to have been the intention of the parties, a new lease if required under this covenant, should be made to commence and take effect from the expiration of the original term. It is usual to make an express stipulation to this effect where there is an original lease creating a term for ninety-nine years renewable forever, and upon the omission thus to state expressly when the new term should commence, is founded the main and strongest argument on the part of the appellant, that the parties here had a different intention. But the insertion of these words is not essential if by other terms and provisions, and the character of the whole instrument, the same intention is made to appear, and that intention is, in our judgment, manifest upon the face of this conveyance. We therefore sustain the appellee's construction of this covenant.

The other ground upon which the appellant claims relief in his bill, is that the lines of two of the lots described in the lease to Gosman, are so inaccurately and vaguely run that it is uncertain what property if any passes thereby. Under the construction we have placed upon the covenant for new leases, it is obvious, the appellant is not entitled to relief upon this second ground, without making Gosman a party to the bill and requiring him to be united in the new lease, by which the mistaken or inaccurate description may be corrected. And the appellee has consented, and makes no objection to the new lease to which Gosman shall be a party, in order to remedy any such defective description, we must affirm the decree appealed from, which dismisses the bill with costs.

*Decree affirmed.*

(Decided 14th June, 1877.)